UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
CENTURY 21 REAL ESTATE LLC, f/k/a
CENTURY 21 REAL ESTATE
CORPORATION,

          Plaintiff,

        **REPORT AND RECOMMENDATION**

   - v -

        CV 07-4134 (NG)(VVP)

TEAM MATES REALTY CORP., and
SALVATORE MARTINEZ,

          Defendants.
------------------------------------------------------x

      This matter was referred by the Honorable Nina Gershon to the undersigned to issue a report and recommendation to determine the scope of relief including injunctive relief, compensatory damages, prejudgment interest, lost profits, royalties, franchise fees, interest, costs, treble damages, and attorney's fees, if any, to be awarded to the plaintiff Century 21 Real Estate LLC (hereinafter "Century 21") as against the defaulting defendants, Team Mates Realty Corp., (hereinafter "Team Mates"), and Salvatore Martinez (hereinafter "Martinez"). This case involves the defendants' infringement of trademarks which are exclusive to Century 21.

## I.    LIABILITY

      The plaintiff has brought this action pursuant to the Lanham Act which invests the federal district courts with subject matter jurisdiction over matters involving trademark infringement. 28 U.S.C.A. § 1331 and 1338, and 15 U.S.C.A. § 1121.

      By virtue of the defendants' defaults, the well-pleaded allegations of the Complaint are deemed admitted, except as to the amount of the plaintiff's damages. *See, e.g., Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 113 S. Ct.

1049 (1993); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Thus, the court accepts the following facts as true.

Plaintiff Century 21, one the largest real estate firms in the United States, is widely known as a provider of real estate brokerage services. *See* Complaint ¶ 7. Century 21's trademarks, service marks, and logos (the "Marks") are on the principal register of the United States Patent and Trademark Office. *Id.* ¶ 8. The Marks are among the most famous trademarks in the country. *Id.* ¶ 15. Century 21 has the exclusive right to use and license the marks, the registration of the marks is in full effect, notice has been given of the registration of the marks, and the plaintiff uses the Marks as abbreviations for its brand name. *Id.* ¶¶ 8-11.

The complaint establishes that Century 21 through its franchise system markets, promotes, and provides real estate services to its brokerage franchises, who are allowed to use the Marks. *Id.* ¶12. Century 21 has invested substantial effort, as well as millions of dollars, to develop goodwill in its name and trademarks. *Id.* ¶ 13. Such efforts have caused the Century 21 name and trademarks to become quite recognizable to consumers who identify the Marks with the plaintiff's real estate brokerage services. *Id.* Given the expansive recognition of the marks, the value of the goodwill developed in the Marks does not lend itself to precise monetary calculations. *Id.* ¶ 14.

Defendant Salvatore Martinez is the president of Team Mates. *Id.* ¶¶ 2-3. Century 21 and Team Mates entered into a Century 21 Real Estate Franchise Agreement (the "Franchise Agreement") which allowed the operation of a Century 21 office on Jamaica Avenue in Richmond Hill, New York. *Id.* ¶ 16. As part of the Franchise Agreement, defendant Martinez signed a Guaranty of Payment and Performance which required him to guarantee the payment of

all franchise fees, advertising fees, service fees, and any other fees associated with the Franchise Agreement. *Id.* ¶¶ 23-24. The Franchise Agreement obligated Team Mates to operate the real estate office commencing on April 1, 2005 for a period of ten (10) years. *Id.* ¶ 17.

The terms of the Franchise Agreement required the defendants to fulfill certain obligations. *Id.* The defendants agreed to maintain and keep records and reports that Century 21 required. *Id.* ¶ 21. In addition, Team Mates agreed that Century 21 could inspect the defendants' business and premises, and Team Mates agreed to makes its books, tax returns, and records available for inspection and audit by Century 21. *Id.* ¶¶ 20-21. The Franchise Agreement permitted Team Mates to use the Marks in connection with the brokerage business, so long as the defendants timely performed their obligations. *Id.* ¶ 17. If the Franchise Agreement was terminated, the defendants were required to immediately cease using the Marks, and to refrain from doing anything to indicate that Team Mates is, or ever was, a Century 21 franchise. *Id.* ¶ 18.

The pleadings further establish that on July 25, 2006, Century 21 advised Team Mates that it was delinquent in payment of fees, and had failed to report numerous closing transactions. *Id.* ¶ 26. The defendants were made aware that unless the deficiencies were cured, Team Mates would be in default of the Franchise Agreement. *Id.* The deficiencies were not cured, and on September 18, 2006, Century 21 informed Team Mates that the Franchise Agreement was terminated. *Id.* ¶ 27. Nonetheless, Team Mates continued to use the plaintiff's Marks. *Id.* By letter dated April 4, 2007, Team Mates was again advised that the Franchise Agreement was terminated, and as part of their obligations they were to desist using the Marks, and holding themselves out as a Century 21 franchise. *Id.* ¶ 28. The defendants have continued to use the

Marks in connection with a real estate business at the Richmond Hill location. *Id.* ¶¶ 29-33, 36, 38, 40-42.

These facts are sufficient to establish the defendants' liability for violation of section 32(1) of the Lanham Act which provides a trademark owner with remedies in a civil action against,

> **(1)** Any person who shall, without the consent of the registrant--
> **(a)** use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; . . .

15 U.S.C. § 1114(1)(a).

The defendants' acts also constitute a violation of section 43 of the Lanham Act which imposes liability in a civil action on

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of any origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .

15 U.S.C. § 1125(a)(1)(A).

The well-pleaded allegations of the complaint further also establish that the defendants' actions constitute a breach of the Franchise Agreement. By its terms the Franchise Agreement is governed by the laws of the State of New Jersey. *See* Declaration of Beth Klepar ("Klepar Decl."), Ex. A § 22.7. Under New Jersey law, to prove a breach of contract the plaintiff must

establish that there is a contract between the parties, that the defendant breached the agreement, that damages resulted from the breach, and that the plaintiff has performed its contractual obligations. *Frederico v. Home Depot,* 507 F. 3d 188, 203 (3d Cir. 2007).

The first three elements of a contract claim under New Jersey law are clearly established. As noted above, the allegations of the Complaint establish that the parties had an agreement, that the defendants violated the agreement by failing to pay fees and that the unpaid fees are the damages incurred by the plaintiff. Although there is no specific allegation in the complaint that the plaintiff performed their obligations, certain assertions in the complaint allow the court to infer that the plaintiff did so. The allegations of the complaint establish that the defendants have used and are continuing to use the Marks; it is therefore reasonable to assume that Century 21 did in fact provide the defendants with the means and materials to make use of the marks, as required under the Franchise Agreement, and that the defendants were receiving a benefit from the bargain. Thus, claims for breach of contract are also established.

## II. INJUNCTIVE RELIEF & DAMAGES

The plaintiff is seeking a permanent injunction against the defendants as well as compensatory damages, liquidated damages, and attorney's fees and costs. Having provided notice to the defaulting defendants, the court is able to receive affidavits in lieu of holding an evidentiary hearing on the appropriate amount of damages to be awarded. *See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997) ("We have held that, under Rule 55(b)(2), 'it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment.' "); *accord, Fustok v. ContiCommodity Serv., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989); *Tamarin v. Adam*

*Caterers, Inc.,* 13 F.3d 51, 54 (2d Cir. 1993). There being no objection by any party to that procedure, the court has received and considered affidavits submitted by the plaintiff, and concludes that they provide a basis for the relief recommended below. The defendants have not made any submissions.

### 1. *Injunctive Relief*

The plaintiff seeks injunctive relief under the Lanham Act. In order to be granted an injunction the movant must show that it is entitled to injunctive relief under the applicable statutes and that it meets the prerequisites for the issuance of an injunction. *King Vision Pay-Per-View, Ltd. v. Lalaleo*, 429 F. Supp. 2d 506, 507 (E.D.N.Y. 2006). Under the Lanham Act the court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant . . . ." 15 U.S.C.A. § 1116. To obtain a permanent injunction, the movant must demonstrate that absent an injunction irreparable harm will ensue, and establish that it does not have an adequate remedy at law. *Roach v. Morse,* 440 F.3d 53, 56 (2d Cir.2006), *quoting N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1362 (2d Cir.1989) (*citing Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 57, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975)).

In a trademark case, irreparable injury is established where "there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Lobo Enters., Inc. v. Tunnel, Inc.,* 822 F.2d 331, 333 (2d Cir. 1987)(internal quotation marks and citations omitted). There is ample evidence in the record that absent an injunction the defendant will continue to infringe the Marks resulting in a continued injury to the plaintiff. The defendants were advised on at least

two occasions to cease and desist the infringing activity, but chose to ignore the warnings. The defendants decision to ignore this action by defaulting is further proof of the need for an injunction.

The court has already found that consumers are likely to be confused by being led into the mistaken belief that the defendants are still affiliated with Century 21. A finding that a trademark infringement gives rise to a likelihood of confusion is sufficient to establish irreparable injury if the injunction is not granted. *See, e.g., New York Kayak Pool Corp. v. R & P Pools, Inc.*, 246 F.3d 183, 185 (2d Cir.2001). If an injured party can be compensated by a monetary damages award, then an adequate remedy at law exists. *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir.1991). However, in cases where confusion leads to damage to reputation, monetary damages are difficult to establish and are unlikely to present an adequate remedy at law. *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004). Therefore, the court recommends that the defendants, their affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert with them, be permanently enjoined from marketing or promoting their brokerage services and other real estate related business through and with the Century 21 Marks.

2. *Compensatory Damages Under the Lanham Act*

The plaintiff is also seeking compensatory damages under the Lanham Act as well as under the Franchise Agreement. Section 35 of the Lanham Act states that,

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and

> 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

15 U.S.C. § 117(a). Under the statute, when seeking actual damages based upon lost profits the plaintiff is required to establish the defendants' sales. *Id.* In assessing damages, the court may consider the unique aspects of the case, and award compensatory damages in an amount not to exceed three times the amount of actual damages. *Id.*

The plaintiff seeks damages under the Lanham Act in the amount of ill-gained profits that the defendants have derived from the unauthorized use of the Marks. The evidence offered in plaintiff's submissions establish the following facts. The Franchise Agreement required the defendants to keep records and reports, *see* Klepar Decl. ¶ 10, Ex. A § 13.1, and to permit Century 21 to inspect the defendants' business, and audit the defendants' records. *Id.*, Ex. A § 13.2.1. The defendants have not permitted Century 21 to conduct any inspection and audit. *Id.* ¶ 19. As a result, the plaintiff is unable to determine the extent of any ill-gotten gains by the defendants. Therefore, the plaintiff requests, and the Court recommends, that the defendants be required to submit to a prompt audit, conducted by a certified public accountant chosen by the plaintiff, in order to account to the plaintiff for any and all sales and profits derived as a result of marketing or promoting the defendants' real estate brokerage services and other real-estate related business through and with the unauthorized use of the Marks. Following the audit, the plaintiff should be entitled to seek, on notice to the defendants, a judgment from the Court for damages based upon the defendants' profits as established by the audit.

### 3. *Compensatory and Liquidated Damages Under the Franchise Agreement*

In addition to damages under the Lanham Act, the plaintiff is also requesting compensatory and liquidated damages pursuant to the express provisions of the Franchise Agreement. Notwithstanding the absence of opposition by the defendants, Rule 55(b) requires the court to make an independent assessment of damages when deciding a motion for default judgment. *See Securities & Exch. Comm'n v. Management Dyn, Inc.,* 515 F.2d 801, 814 (2d Cir. 1975). Thus, the court cannot simply accept a statement of the plaintiff concerning the amount of damages, but rather must be provided with evidentiary proof that establishes the amount of damages.

As to the plaintiff's request for compensatory damages for past due fees owed, section 16.7.1 of the Franchise Agreement states that following termination of the Agreement, the defendants are required to pay all sums then owed. *Id.* ¶ 20, Ex. A. Under the Agreement, the defendants were required to pay two types of fees, a six-percent royalty fee, and a two-percent fee for Century 21's National Advertising Fund (NAF), a fee sometimes called the advertising fee. Both fees are calculated as a percentage of gross revenue received from various types of transactions, including (1) any transaction in process at the date of termination, (2) any transaction resulting from any referral sent to or received from any other Century 21 office, and (3) any closing transaction completed after the termination, if the listing for the property that was sold was initially procured by Team Mates while operating under the Franchise Agreement. *Id.*

To substantiate the amount of fees owed at the time of termination, the plaintiff has supplied the court with a business record referred to as a "Custom Account Status Report"

(hereinafter the "Status Report" or "Report") which was generated by plaintiff's Financial Services department. Declaration of Jacqueline Bertet ("Bertet Decl."), ¶ 4, Ex. A. Although the plaintiff does not provide an explanation for how the Status Report was generated, the Report reveals that the defendants' outstanding fee balance for the time period from January 3, 2006 through October 24, 2006 totaled $10,745. *Id.*

The absence of an explanation for how the Status Report was generated is somewhat troubling, as the Status Report provides information which appears to be at odds with the plaintiff's statements about how fees under the Agreement are calculated. For instance, the plaintiff asserts that the royalty fee is 6% of gross revenue and the advertising fee is 2% of gross revenue. Curiously, however, the Status Report reflects precisely the same amount of royalty fee – $500 – for each month covered by the Report. One would expect that gross revenues would fluctuate month to month, resulting in fluctuations in the fees calculated as a percentage of gross revenues. The advertising fee similarly remains consistent month to month, although it jumps from $562 per month to $587 per month after the first six months. Even more troubling is the fact that the amount of the royalty fee, at 6%, should be three times the amount of the advertising fee, at 2%. According to the Status Report, however, the royalty fees owed for each month were *less* than the advertising fees owed. An explanation for these discrepancies would have been advisable; there appear to be minimum fee provisions in the Agreement which would provide a basis for the consistency in the fees reflected in the Status Report.[1] Nevertheless, the

---

[1]The pages of the copy of the Agreement appended to the Klepar Declaration which deal with fees, including the page on which a provision regarding minimum fees appears, are partially obscured and cannot be deciphered. Klepar Decl., Ex. A, at 11-12.

plaintiff asserts that the Status Report is a record kept in the ordinary course of business, and in the absence of any contrary proof, the court accepts it as sufficient to establish the fees owed at the time of termination.

As to liquidated damages, section 16.7.2 of the Franchise Agreement states that if the Agreement is terminated, the plaintiff is entitled to lost future profits consisting of all amounts the defendants would have paid as royalty fees and advertising fees from the date of early termination until the natural expiration of the Agreement. *See* Klepar Decl. ¶ 22, Ex. A, § 16.7.2. The Agreement also provides a formula for computing lost future profits, under which the monthly average of the combined fees owed from the inception of the agreement to the date of early termination is multiplied by the number of months remaining in the term of the Agreement, and then discounted to present value at the rate of 8% per annum. *Id.*

The plaintiff asserts that, using this formula, they have calculated the amount of lost future profits to be at least $101,947.49. *See* Bertet Decl. ¶ 7, Ex. B. Here again, the plaintiff's submissions create some doubt about their accuracy. Initially, the plaintiff sought $110,812.49, based on an average monthly fee which was calculated to be $1,003.44, but failed to discount that figure to present value. *Id.* ¶¶ 5, 7. Based on the Custom Account Status Report, however, the average monthly fee they should have used to calculate lost future profits was actually greater than $1,003.44. *Id.* ¶ 6. Nevertheless, they are willing to accept a figure based on an average monthly fee of $1,003.44, which, when properly discounted to present value, yields the amount they have asked the court to award. *Id.* ¶ 7. Although the various computational discrepancies give the court some pause, because the amount sought is less than what the Status Report would otherwise support, there is adequate evidentiary support for the award requested by the plaintiff.

## III. ATTORNEY'S FEES AND COSTS

The plaintiff is seeking an award of $10,744.67, consisting of $10,188 for attorney's fees and $556.67 for costs. *See* Declaration of Daniel K. Winters, Esq. ("Winters Decl."). The Lanham act provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). A willful infringement may be considered an exceptional case under the Lanham Act, *see Bambu Sales, Inc. v. Ozak Trading Incorporated*, 58 F.3d 849, 854 (2d Cir. 1995), and given the defendants' persistent use of the Marks in the face of cease and desist letters there is more than sufficient proof to establish willful infringement. Separately, the Franchise Agreement provides the plaintiff with a contractual right to recover reasonable attorney's fees and costs in the event the agreement is terminated. *See* Klepar Decl., Ex A, ¶ 16.6. An award of reasonable attorneys' fees and costs is therefore appropriate in this action.

The Second Circuit has adopted the "lodestar" approach in determining what constitutes a reasonable attorneys' fee. *See Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008). "The so-called 'lodestar' figure . . . is arrived at by multiplying 'the number of hours reasonably expended on the litigation . . . [with] a reasonable hourly rate." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). This assessment "should be based on 'prevailing market rates,' for comparable attorneys of comparable skill and standing in the pertinent legal community," *id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)), which, here, is the Eastern District of New York, *Pinner v. Budget Mortgage Bankers, Ltd.*, 336 F. Supp. 2d 217, 220 (E.D.N.Y. 2004). To aid the court in determining the amount of reasonable attorney's fees, the

plaintiff is required to submit evidence that provides a factual basis for a fee award. *Hensley v. Eckerhart,* 461 U.S. at 433-434. In this Circuit, that entails submitting contemporaneous billing records documenting the date, the hours expended, and the nature of the work done, for each attorney. *See New York Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1148, 1154 (2d Cir. 1983). The court must then determine whether the "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 406 U.S. at 896 n.22; *Luciano v. Olsten Corp.,* 109 F.3d 111, 115 (2d Cir. 1997). Where adequate records are not submitted, the court may deny fees altogether or reduce the award. *See New York State Ass'n,* 711 F.2d at 1148; *Private Sanitation Union Local 813, International Brotherhood of Teamsters v. Gaeta-Serra Associates, Inc.*, Dkt. No. CV 02-5526, 2005 WL 2436194, at *3-4 (E.D.N.Y. August 12, 2005). In addition, the court may exclude hours from the lodestar calculation that it finds to be excessive, duplicative, or unnecessary. *Duke v. County of Nassau,* 2003 WL 23315463, at *1 (E.D.N.Y. Apr. 14, 2003), *citing Hensley,* 461 U.S. at 434, *Luciano,* 109 F.3d at 116.

In reviewing the plaintiff's submissions, the court notes several weaknesses. First, according to the time sheets provided with the Winters Declaration, the plaintiff seeks reimbursement for the work of no less than six legal personnel. *See* Winters Decl. ¶ 6, Ex. C. However, the declaration provides no detail whatsoever concerning the positions held, or the specific qualifications of, the various individual whose hours are reflected in the time sheets. *See id.* The court thus can only speculate, based upon the hourly rates charged, on the positions held

by each of these individuals.[2] The court's assumption is that three attorneys (Daniel K. Winters, Zoe F. Feinberg, and Jennifer A. Guidea), and three paralegals (Evelyn Green, Justin B. Castro, and Nadine Ortiz) performed work on this matter. Although the rates at which their time was billed appears to be generally within acceptable ranges based on the court's knowledge of the legal market, without information about their qualifications and experience, and without information about prevailing market rates, the court is hampered in assessing whether the rates charged are in line with those charged by other practitioners of comparable skill and experience in the community.

A second concern is the number of individuals who were involved in this straightforward matter. When numerous attorneys are assigned to work on the same manner, duplication of effort is inevitable. Each attorney assigned invariably has to bill time strictly to familiarize themselves with the facts, and procedural posture of the case. One attorney could easily have handled all of the tasks required here.

Given the deficiency in the information provided by the plaintiff in support of the application, and the duplication of effort that undoubtedly occurred through the use of multiple attorneys where one or at most two would have been sufficient, an overall reduction of ten percent in the fee award is warranted. Thus, the court recommends that $9,169.20 in attorney's fees be awarded. The plaintiff also seeks $556.67 for filing fees and costs which are proper and should be awarded.

---

[2]The submissions do not state, as required, the hourly billing rate for each individual. Based upon the court's calculations hours were billed as follows: Winters $425/hour, Feinberg $365/hour, Guidea $345/hour, Green $110/hour, Castro $180/hour, and Ortiz $210/hour.

## CONCLUSION

In accordance with the above considerations, the undersigned hereby **RECOMMENDS** that,

a. the defendants their affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert with them, be permanently enjoined from marketing or promoting their brokerage services and other real estate related business through and with the Century 21 Marks;

b. the defendants be required to submit to an audit of their books and records by a certified public accountant to determine any profits to which the plaintiff may be entitled under the Lanham Act, followed by the entry of judgment in the amount of any profits so determined; and

c. the plaintiff be awarded, pursuant to the Franchise Agreement, $10,745 in compensatory damages, $101,947.49 in liquidated damages, $9,169.20 in attorney's fees, and $556.67 in costs against the defendants Team Mates and Salvatore Martinez.

\*      \*      \*      \*      \*      \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d

Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**Counsel for the plaintiff shall serve a copy of this Report and Recommendation on the defendants by regular mail and file proof of such service in the record.**

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
February 18, 2009